# STATE OF MICHIGAN

# COURT OF APPEALS

In re SADVARI, Minors.

UNPUBLISHED
April 19, 2018

No. 339464
Kent Circuit Court
Family Division
LC Nos. 15-053899-NA;
15-053900-NA; 15-053901-NA

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Respondent-father appeals of right the trial court order terminating his parental rights to the minor children under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. BACKGROUND

The Department of Health and Human Services (DHHS) submitted an initial petition for custody regarding the three minor children in December 2015. The petition alleged that respondent had a criminal history, including three operating a motor vehicle while intoxicated (OWI) offenses and a minor in possession of alcohol offense, and he was diagnosed with anxiety, depression, and bipolar disorder. The petition also alleged mother attempted suicide in the home while respondent and the children were present, and mother and respondent attempted to start a fire in the fireplace while they were intoxicated and caring for the children, but they failed to open the fireplace flue and the home filled with smoke, which prompted respondent to flee the scene. Additionally, the petition alleged that in December 2015, while respondent and mother were in a vehicle with the three children, respondent punched mother twice in the face and fled the scene, which resulted in the mother's arrest for drunk driving and child endangerment.

Initially, respondent and mother received a treatment plan, and reunification was the goal. The children were first placed in a non-relative foster home, but they were eventually placed with the paternal grandmother for the pendency of the proceedings. The trial court held permanency planning hearings every three months and, approximately 14 months after the initial petition was filed, DHHS filed a termination petition in February 2017 on the trial court's order. On June 14, 2017, the trial court held a termination hearing. At the close of the hearing, the trial court concluded that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination was in the best interests of each child.

-1-

On appeal, respondent does not challenge the statutory grounds for termination. As such, we may presume that the trial court did not clearly err in finding that the unchallenged statutory grounds were established by clear and convincing evidence. *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341; 612 NW2d 407 (2000). Rather, respondent argues that the trial court (1) failed to consider a possible guardianship, (2) should have placed the children in a guardianship with their paternal grandmother, (3) relied on evidence outside of the record to terminate parental rights, and (4) clearly erred in finding that termination was in the children's best interests.

## II. STANDARD OF REVIEW

This Court reviews for clear error the trial court's ultimate determination that termination of parental rights is in the best interests of the child. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). "A finding is 'clearly erroneous' if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id.*, quoting *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

## III. ANALYSIS

Once a statutory ground for termination of parental rights is established, the trial court must order termination if it finds by a preponderance of the evidence "that termination of parental rights is in the child's best interests." MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). In this context, we note that "the interests of the child and the parent diverge once the petitioner proves parental unfitness." *In re Moss*, 301 Mich App at 87. Therefore, the interests of the children, not the parent, are the focus of the best-interest stage of child protective proceedings. *Id.* at 87-88.

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the [child's] well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

Courts should also look at a parent's substance abuse history, *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2011), and the length of time the children have been in care, *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015). Placement with relatives, however, weighs against termination, and the trial court must address this factor explicitly. *In re Olive/Metts*, 297 Mich App 35, 43; 297 NW2d 144 (2012).

Respondent first argues that the trial court erred because it did not properly consider a guardianship at the permanency planning or termination hearings. We disagree.

The purpose of a guardianship is to avoid the termination of parental rights, *In re Mason*, 486 Mich 142, 168-169; 782 NW2d 747 (2010), and it allows a child to keep a relationship with a parent when placement with the parent is not yet possible, *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). In MCL 712A.19a(4), the Legislature expressed its intent that permanency planning must include consideration of guardianship and permanent placement "with a fit and willing relative." "The statute authorizing the guardianship contemplates the appointment of a guardian only after the permanency planning hearing." *In re TK*, 306 Mich App at 707. MCL 712A.19a(4) states, in relevant part:

> At or before each permanency planning hearing, the court shall determine whether the agency has made reasonable efforts to finalize the permanency plan. At the hearing, the court shall determine whether and, if applicable, when the following must occur:
>
> (a) The child may be returned to the parent, guardian, or legal custodian.
>
> (b) A petition to terminate parental rights should be filed.
>
> (c) The child may be placed in a legal guardianship.
>
> (d) The child may be permanently placed with a fit and willing relative. [MCL 712A.19a(4)(a)-(d).]

Further, MCL 712A.19a(8)(a) "expressly establishes that, although grounds allowing the initiation of termination proceedings are present, initiation of termination proceedings is not required when the children are 'being cared for by relatives.'" *In re Mason*, 486 Mich at 164. Subsection (8)(a) provides:

> If the court determines at a permanency planning hearing that a child should not be returned to his or her parent, the court may order the agency to initiate proceedings to terminate parental rights. Except as otherwise provided in this subsection, if the child has been in foster care under the responsibility of the state for 15 of the most recent 22 months, the court shall order the agency to initiate proceedings to terminate parental rights. The court is not required to order the agency to initiate proceedings to terminate parental rights if 1 or more of the following apply:
>
> (a) The child is being cared for by relatives. [MCL 712A.19a(8)(a).]

"[T]he appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *In re TK*, 306 Mich App at 707; see also MCL 712A.19a(7). After a trial court makes these two determinations, it must then "find that it is in the child's best

interests to appoint a guardian." *In re TK*, 306 Mich App at 707; see MCL 712.19a(7)(c) and MCR 3.979(A).

Respondent argues that the trial court and the DHHS improperly operated under an "unwritten understanding" that the children could not be cared for by their paternal grandmother under a guardianship because they were too young to benefit from a guardianship. According to respondent, this was the trial court's only rationale, and it never fully analyzed whether a guardianship would have been in the children's best interests.

First and foremost, the trial court *did* consider the possibility of a guardianship with their paternal grandmother at the conclusion of each permanency planning hearing. At the close of each of those hearings, the trial court questioned the witnesses and inquired into the possibility of a guardianship with the paternal grandmother. The record does indicate that part of the trial court's rationale against the guardianship was based on testimony from the caseworker who indicated that the DHHS believed the children were too young to benefit from guardianship. This was a proper consideration. Regardless, the trial court never foreclosed the possibility of a guardianship until it finally terminated respondent's parental rights. At the March 24, 2017 permanency planning hearing, the trial court determined that the children could not be safely returned to the home, and it ordered the DHHS to file a termination petition. Because the trial court ordered the filing of the termination petition, it was not required to analyze whether a guardianship was in the children's best interests. A trial court may terminate a parent's rights when doing so is in their best interests—even if the children are placed with relatives and guardianship is an option. *In re Gonzales/Martinez*, 310 Mich App 426, 435; 871 NW2d 868 (2015). At the joint permanency planning and termination hearing, the trial court again addressed the relative placement and the possibility of a guardianship, but it aptly noted several problems and concerns regarding continued placement with paternal grandmother. In fact, the DHHS had filed a petition just before the termination hearing for purposes of removing the children from the grandmother's care. Primarily, the trial court relied on testimony from the case worker and other DHHS staff that the grandmother was focused on reuniting the children with respondent and that grandmother's request for guardianship was a ruse to circumvent termination of respondent's parental rights. Throughout the pendency of this case, respondent demonstrated that he had unresolved substance abuse and mental health issues. Yet, the grandmother denied that respondent had any problems, and she consistently blamed mother for the commencement of the child protective proceedings. The grandmother's refusal to acknowledge respondent's lack of fitness to parent the children and her focus on returning the children to their father's care supported the trial court's determination that placement of the children with her did not weigh against termination of respondent's parental rights.[1]

---

[1] Respondent relies on a Michigan Supreme Court order that remanded a case to the trial court for reconsideration of whether termination was in the best interests of the child because "[t]he trial court judge failed to articulate whether her generalized concerns regarding the lack of permanency and stability for younger children placed with a guardian are present for *this* child." *In re RJK*, 501 Mich 867 (2017). Our Supreme Court further ordered that "the trial court shall make an individualized determination as to whether terminating respondent's parental rights is in

-4-

The trial court also relied on two documents that the paternal grandmother submitted to the trial court before the termination hearing. Now, respondent argues that the trial court erred in considering those documents. This argument fails.

When the documents were discussed at the termination hearing, respondent did not object to the trial court's consideration of their contents. Therefore, this issue is unpreserved for appeal and this Court reviews the issue for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (1999). When plain error has occurred, reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings. *Id*. at 763-764.

We conclude that the trial court properly considered paternal grandmother's documentation. "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. The grandmother voluntarily sent the documents to the trial court in an attempt to demonstrate why she was a proper caregiver for the children and why respondent's parental rights should not be terminated. The documentation consisted of a letter and a 41-page, single-spaced affidavit containing 65 numbered paragraphs. The affidavit demonstrated significant paranoia regarding the DHHS and the court system. For example, the grandmother claimed that the case worker was attempting to install "some kind of device on my outlets and light switches so you can listen to me or watch me." The affidavit was also replete with references to the grandmother's desire to use a guardianship to return custody of the children to respondent. Yet, the affidavit showed that the grandmother was completely unwilling to acknowledge respondent's significant substance abuse history and mental health challenges. The affidavit demonstrated that the grandmother was pursing respondent's best interests even when they were contrary to the children's best interests. The documents were evidence in the record available to the trial court, and we find no plain error in its consideration as direct evidence regarding the grandmother's fitness to care for the children.

Furthermore, even if the trial court erred in considering the grandmother's letter and affidavit, there was sufficient evidence presented by the DHHS witnesses to establish that the paternal grandmother was unfit to serve as a guardian for the children. This included testimony that the grandmother refused to cooperate with CPS during an investigation into whether one of the children suffered injuries while in her care. This also included testimony that the grandmother refused to acknowledge respondent's problems and that she prioritized his best

---

the best interests of respondent's youngest child without regard to a generalized policy disfavoring guardianship for children under the age of 14." *Id*. Unlike the circumstances in *In re RJK*, the trial court here articulated a number of other specific reasons to deny a guardianship and order termination, including the concerns that the paternal grandmother was biased towards her son, her priority was simply to reunite the children with respondent, and she essentially refused to acknowledge that respondent had numerous unresolved issues that prevented reunification.

interests over those of the children. For these reasons, the trial court did not clearly err in finding that a guardianship with their paternal grandmother was not in the children's best interests.

Lastly, respondent argues that the trial court clearly erred when it found that termination was in the best interests of the children because (1) the children's placement with their paternal grandmother weighed against termination, and (2) the trial court did not articulate its findings as to each individual child. We disagree.

The trial court concluded that termination of respondent's parental rights was in the children's best interests because the following factors weighed in favor of termination: the unsuitability of guardianship for the children, respondent's lengthy history of struggling with emotional stability, the children's need for permanence and stability given their young age, respondent's poor history of attending parenting time, respondent's non-compliance with his treatment plan, and the positive potential for adoption given the children's ages. Only the following factors weighed against termination: father's bond with the children, the absence of continued domestic violence in the home, and respondent was not involved in questionable relationships with other individuals. The children's well-being while placed in foster care with their paternal grandmother was a neutral factor. The trial court did not clearly err, based the foregoing, when it concluded that termination was in the children's best interests.

The trial court did not err when it found that, at most, the relative placement was a neutral factor given the concern of continued placement with the grandmother. Further, respondent suffered from significant substance abuse and mental health problems and father failed to participate in services designed to overcome those obstacles to reunification with his children. He repeatedly failed drug tests, and his drug use included the use of cocaine. Respondent also failed to visit his children when provided the opportunity to do so, choosing to visit them only 54% of the time. The record evidence as to respondent's substance abuse issues, mental health issues, and his repeated failure to participate in his treatment plan or visit his children favors termination regardless of relative placement.

Finally, the trial court did not err when it considered the best interests factors for the children collectively. We have explained that "if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *In re White*, 303 Mich App at 715. When the trial court made its best-interests determination, it explained that the best-interest factors did not have to be addressed separately for each child. We detect no error in the trial court's finding. The three children were all young—the two youngest being twins. The trial court found that the three were healthy, despite some differences in development. The interests of the three children did not significantly differ, and there was no reason for the trial court to engage in a superfluous best-interests analysis for each of the three children. All three greatly needed permanence, stability, and finality, and they had an equal chance at adoption. A majority of the remaining

factors focused on respondent's ability to parent the children, and there was no need to repeat each of those factors for each child. In conclusion, the trial court did not clearly err in finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron